u- BMK

ORIGINAL

Of Counsel:
CRONIN, FRIED, SEKIYA,
KEKINA & FAIRBANKS

PATRICK F. McTERNAN          4269-0
HOWARD G. McPHERSON       5582-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-1433
Facsimile: (808) 536-2073
E-mail:   cfskf@croninfried.com

CHASE KIMBALL
LAW OFFICES OF RANDAL L. MEEK, P.C.
935 East 7220 South, D-100
Midvale, Utah 84047
Telephone: (800) 640-6110
Facsimile: (801) 566-8244
E-mail:   ck@rlmlaw.com

Attorneys for Claimants
HEALY BARTLETT and STEVE JAQUES

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 20 2005

at 2 o'clock and 59 min M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter<br><br>of<br><br>The Complaint of X-TREME PARASAIL, INC., a Hawaii corporation, regarding Motor Vessel, X-TREME, Official Number 1153017 for exoneration from or limitation of liability,<br><br>Petitioner. | ) CIVIL NO. CV04-00730 BMK<br>) (In Admiralty)<br>)<br>) NOTICE OF HEARING;<br>) CLAIMANTS' SECOND MOTION<br>) FOR PARTIAL SUMMARY<br>) JUDGMENT; MEMORANDUM<br>) IN SUPPORT OF MOTION;<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>) [Caption continued on next page]<br>) |



) DATE: February 8, 2006
) TIME:  2:00 p.m.
) JUDGE:  Hon. Barry M. Kurren
)
) Trial Date:   April 4, 2006
) Trial Judge: Hon. Barry M. Kurren
)

## NOTICE OF HEARING

TO:  M. W. MONROE & ASSOCIATES, P.C.
DANIEL F. BERBERICH, ESQ.
5933 W. Century Boulevard
Royal Airport Plaza, Suite 800
Los Angeles, California 90045

LAW OFFICES OF ROY Y. YEMPUKU, ALC
ROY Y. YEMPUKU, ESQ.
The Pacific Guardian Center
Suite 2930, Mauka Tower
737 Bishop Street
Honolulu, Hawaii 96813

Attorneys for Petitioner
X-TREME PARASAIL, INC.

PLEASE TAKE NOTICE that the attached Claimants' Second Motion For

Partial Summary Judgment will come on for hearing before the Hon. Barry M.

Kurren, United States Magistrate Judge, in his courtroom in the U.S. Courthouse,

300 Ala Moana Boulevard, Honolulu, Hawaii  96813, on Wednesday, February 8,

2006 at 2:00 p.m., or as soon thereafter as counsel may be heard.

2

DATED:  Honolulu, Hawaii, December 20, 2005.


PATRICK F. McTERNAN
HOWARD G. McPHERSON
Attorneys for Claimants
HEALY BARTLETT and
STEVE JAQUES

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter | ) CIVIL NO. CV04-00730 BMK |
| | ) (In Admiralty) |
| of | ) |
| | ) CLAIMANTS' SECOND MOTION |
| The Complaint of X-TREME | ) FOR PARTIAL SUMMARY |
| PARASAIL, INC., a Hawaii corporation, | ) JUDGMENT |
| regarding Motor Vessel, X-TREME, | ) |
| Official Number 1153017 for exoneration | ) |
| from or limitation of liability, | ) |
| | ) |
| Petitioner. | ) |
| | ) |

CLAIMANTS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Claimants

Healy Bartlett and Steven Jaques hereby respectfully move the Court for an Order

establishing liability as a matter of law, or alternatively, that a strong inference of

negligence has been established for purposes of further proceedings.

This Motion is based upon the attached Memorandum, Claimants'

concurrently filed Concise Statement of Facts, and upon the record and file herein.

DATED: Honolulu, Hawaii, December 20, 2005.

PATRICK F. McTERNAN
HOWARD G. McPHERSON
Attorneys for Claimants
HEALY BARTLETT and
STEVE JAQUES

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter | ) CIVIL NO. CV04-00730 BMK |
| | ) (In Admiralty) |
| of | ) |
| | ) MEMORANDUM IN SUPPORT |
| The Complaint of X-TREME | ) OF MOTION |
| PARASAIL, INC., a Hawaii corporation, | ) |
| regarding Motor Vessel, X-TREME, | ) |
| Official Number 1153017 for exoneration | ) |
| from or limitation of liability, | ) |
| | ) |
| Petitioner. | ) |
| | ) |

## TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................ ii, iii

I.  INTRODUCTION ............................................................................... 1

II.  STANDARDS OF REVIEW ................................................ 4

III.  ARGUMENT ............................................................................ 5

    A.  All Three *Res Ipsa* Elements are Met..................................5

        1.  Claimants Were Clearly Not at Fault........................6

        2.  XPI Had Exclusive Control of the Towline ...............6

        3.  Proper Strength-Rated Towlines Do Not Usually Break ............6

    B.  Spoliation is Also Present.........................................7

    C.  The Effect is a Major Shift in the Burden of Proof............................7

    D.  Absent "Significant Probative Evidence" Liability is Established ........................................8

IV.  CONCLUSION ....................................................................11

## TABLE OF AUTHORITIES

**CASES**                                                      **PAGES**

*American River Transportation Co. Inc. v. Paragon Marine Services Inc.*, 213 F.Supp.2d 1035 (E.D.Mo. 2002) .............................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................4

*Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431 (9th Cir. 1983) .................5, 6

*Austerberry v. United States*, 169 F.2d 583 (6th Cir. 1948) ......................9

*British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978)...........................4

*California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir. 1987) .............................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................4

*Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285 (9th Cir. 1987) ................4

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253 (1968) .......................................4

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993) ....................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............................................5

*State of California v. SS Bournemouth*, 318 F.Supp 839 (C.D.Cal. 1970) .............................................8, 9, 10

*Stoddard v. Ling-Temco-Vough, Inc.*, 513 F.Supp 314 (C.D.Cal. 1981) .................6

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626 (9th Cir. 1987) .............................................4

*United States v. Baycon Industries Inc.*, 804 F.2d 630 (11th Cir. 1986)............8, 10

*United States v. Chesapeake & Delaware Shipyard*, 369 F.Supp 714 (D.Md. 1974) .............................................7, 9

*Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995) ............................7

## **OTHER AUTHORITIES**                                    **PAGES**

M. Shain, "Res Ipsa Loquitur Presumptions and Burden of Proof"
(1945) ............................................................................................................... 6

2 *Wigmore on Evidence*, § 285 at 192. (Chadbourn rev. 1979) ............................... 7

## I.    <u>INTRODUCTION</u>

A high strength towline far exceeding industry standards breaks during routine parasailing operations, in calm seas and light winds, causing serious injury. Does this type of event occur without operator negligence, when the line is wholly within the operator's control, and it is clear the injured persons did nothing wrong?

Decidedly not.

And that is the essence of this Motion.

Petitioner X-Treme Parasail, Inc. (XPI) conducts parasailing operations for tourists off Waikiki. It uses a towline product called "Amsteel Blue." The line is manufactured by Samson Technologies, one of the largest rope manufacturers in the world. It has a breaking strength of 9600 pounds. According to the testimony of XPI's owner and President, Greg Longnecker, parasailing industry standards require a breaking strength of only 5800 pounds.

In the late afternoon of August 19, 2004, Claimants Healy Bartlett and Steve Jaques, visitors from Salt Lake City, were aloft outside Kewalo Basin, tandem parasailing behind XPI's tow vessel *X-Treme*. It was a typically mild summer day. Light tradewinds were gently blowing at 10-15 mph. Seas were running 2 feet or less. The boat's crew, Captain James Regelbrugge and deckhand Jason Berndt, maneuvered the vessel in the same way they always did – nothing unusual.

1

Yet the towline snapped unexpectedly, with a sound that was heard all the way down on the boat, causing a metal bar in the parasail rigging to snap back forcefully, striking Ms. Bartlett and Mr. Jaques violently in the head.

Throughout this litigation, which was commenced by XPI itself under the much criticized and highly anachronistic Shipowners Limitation of Liability Act, 46 U.S.C. §§ 181-189 (1853), XPI has taken the position that Claimants Bartlett and Jaques must discover and prove precisely what caused XPI's towline to fail during the accident, and how precisely XPI is at fault for that failure.

In response, Claimants seek partial summary judgment on liability under the *res ipsa loquitur* and spoliation of evidence doctrines.

If the undisputed facts recounted above do not by themselves persuade the Court to find XPI liable, Your Honor should also consider the fact that XPI concedes it had not one, but *two prior* incidents last summer in which the very same towline product, the same Samson Amsteel Blue rope (either the same individual length involved in the subject accident, or an identical piece purchased from the same supplier), also snapped with customers aloft behind XPI's vessels.

In other words, prior to this accident, XPI was on actual notice there was something very wrong with its towline system.

Inexplicably, however, XPI did absolutely nothing to investigate what caused the line to break in the two prior incidents. To this day, according to its

President Mr. Longnecker, it has no idea, although the limited few possibilities that XPI should have immediately recognized, and investigated, are obvious.

Either, as seems most likely, (1) XPI was misusing the product in some way in its operations causing it to repeatedly break; or less likely, (2) the product within its rated manufacturer's specifications was not appropriate for XPI's operations; or even less likely still, (3) the individual pieces of rope that reached XPI were somehow defectively constructed at the factory, or were somehow altered and harmed in the chain of distribution, before reaching XPI.

The point is that under *any* of those possible scenarios, or any other scenario, XPI had, and readily admits it had, *actual notice* something was wrong and it took no corrective action whatsoever. That omission is negligence as a matter of law.

More astonishing, XPI also admits, again through its President Mr. Longnecker, that it *still* has no idea – and *still* has taken no corrective action whatsoever – even after this third incident that sent two people to the hospital.

Worse yet, XPI has also prevented any meaningful investigation into the cause by anyone else. It is undisputed XPI engaged an experienced maritime attorney, Bryan Y.Y. Ho, on the very day this accident occurred, to investigate and respond, in anticipation of litigation. Yet XPI, and Mr. Ho too apparently, did absolutely nothing to safeguard and preserve the failed, frayed portion of the towline for inspection and testing. XPI now says it is "lost."

3

## II.    **STANDARDS OF REVIEW**

As everyone knows, one of the principal purposes of summary judgment

procedure is to identify and dispose of factually unsupported claims and defenses.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus:

> [i]f the party moving for summary judgment meets its
> initial burden of identifying for the court the portions of
> the materials on file that it believes demonstrate the
> absence of any genuine issue of material fact, the
> nonmoving party may not rely on the mere allegations in
> the pleadings in order to preclude summary judgment.

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th

Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving

party set forth, by affidavit or as otherwise provided in Rule 56, "specific facts

showing that there is a genuine issue for trial.'" *Id.,* quoting Fed. R. Civ. P. 56(e)

(emphasis original). At least some "'significant probative evidence" tending to

support a defense must be produced. *Id.,* quoting *First Nat'l Bank v. Cities Serv.*

*Co.*, 391 U.S. 253, 290 (1968). Legal memoranda and oral argument are not

evidence and do not create issues of fact capable of defeating an otherwise valid

motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946,

952 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979).

The standard for a grant of summary judgment reflects the standard

governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North*

*America*, 815 F.2d 1285, 1289 (9th Cir. 1987), citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). Indeed, "if the factual context makes the non-moving party's claim <u>implausible</u>, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis original), citing *Matsushita*, 475 U.S. at 587.

## III.    **ARGUMENT**

### A.    **All Three *Res Ipsa* Elements are Met**

"*Res ipsa loquitur* is a form of circumstantial evidence that permits an inference of negligence to be drawn from a set of proven facts." *Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431, 1437 (9th Cir. 1983). "The doctrine is applicable in admiralty cases." *Id.* The doctrine is essentially as follows:

> When a thing which causes injury, [1] without fault of
> the injured person, [2] is shown to be under exclusive
> control of the defendant, and [3] the injury is such as, in
> the ordinary course of things, does not occur if the one
> having control uses proper care, *then the injury arose
> from defendant's want of care.*

*Stoddard v. Ling-Temco-Vough, Inc.*, 513 F.Supp 314, 321 (C.D.Cal. 1981)

(emphasis added), quoting M. Shain, "Res Ipsa Loquitur Presumptions and Burden

of Proof" (1945), *aff'd* 711 F.2d 1431 (9th Cir. 1983) (*Ashland, supra*).

"It is a question of law whether *res ipsa* may apply to a given set of facts."

*Ashland,* 711 F.2d at 1438.  As we are confident the Court will agree, the doctrine

applies in this case, given the undisputed facts established through discovery.

### 1.    Claimants Were Clearly Not at Fault

First, there is no evidence even suggesting that either Claimant was at fault

in any way in causing this accident.  This satisfies the initial *res ipsa* element.

### 2.    XPI Had Exclusive Control of the Towline

Similarly, it is undisputed that XPI alone had control over the towline at the

time of the accident.  The second element is thus satisfied.

### 3.    Proper Strength-Rated Towlines Do Not Usually Break

The third and final element is also clearly met.  The "Amsteel Blue" towline,

according to XPI itself, is manufactured to a breaking strength far in excess of the

minimum industry standard.  Obviously, in the "ordinary course of things," such as

this routine parasailing trip in light winds and calm seas, it should not break.

**B.    Spoliation is Also Present**

"Under the spoliation of evidence rule, an adverse inference may be drawn against the party who destroys relevant evidence." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995). "While a finding of bad faith suffices to permit such an inference, it is not always necessary." *Id.* at 156, citing *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "*Even the mere failure, without more, to produce evidence* that naturally would have elucidated a fact at issue permits an inference that 'the party fears [to produce the evidence]; and this fear is some evidence that the circumstance or document or witness, if brought, *would have exposed facts unfavorable to the party.*'" *Id.* at 156 (emphasis added), citing 2 *Wigmore on Evidence*, § 285 at 192. (Chadbourn rev. 1979).

It can hardly be argued that the frayed, failed portion of XPI's towline is not relevant evidence. That, and the undisputed fact that XPI "lost" it, thus gives rise to a second adverse inference, doubling the already strong *res ipsa* inference.

**C.    The Effect is a Major Shift in the Burden of Proof**

"The legal effect of meeting the three criteria of *res ipsa loquitur* is that the fact finder is warranted in inferring that the defendant was negligent." *United States v. Chesapeake & Delaware Shipyard*, 369 F.Supp 714, 718-719 (D.Md. 1974). This in turn, causes significant procedural changes:

> If the trier of the fact draws an inference of negligence,
> *procedural* implications arise. Although the burden of

> proof by a preponderance of the evidence still rests upon
> the plaintiff, once an inference of negligence is drawn
> after a weighing of the facts, the plaintiff has established
> a *prima facie* case of negligence. Consequently, the
> burden of going forward with the evidence shifts to the
> defendant, and it is for him to produce rebuttal evidence
> or run the risk of non-persuasion.

*Id.* at 719 (emphasis original); *United States v. Baycon Industries Inc.*, 804 F.2d

630, 634 (11th Cir. 1986) ("Once the inference of negligence was established,

appellants had the burden of rebutting the inference").

**D.     Absent "Significant Probative Evidence" Liability is Established**

"The theory of *res ipsa loquitur* as an evidentiary device has been

repeatedly accepted in admiralty cases." *State of California v. SS Bournemouth*,

318 F.Supp 839, 841 (C.D.Cal. 1970).

Indeed, in a number of cases admiralty courts have applied the doctrine and

found negligence liability based on it. *E.g., Baycon Industries, supra*, 804 F.2d at

633 ("We conclude that it was not clearly erroneous for the district court, under

these facts, to apply the doctrine of *res ipsa loquitur*. . . . The district court's

finding that the appellants were negligent was based on the doctrine of *res ipsa

loquitur*."); *American River Transportation Co. Inc. v. Paragon Marine Services

Inc.*, 213 F.Supp.2d 1035, 1058 (E.D.Mo. 2002) ("The Court concludes that each

of the three *res ipsa loquitur* elements have been satisfied. . . . warranting the

imposition of liability on defendants on a second, independent basis."), *aff'd* 329

F.3d 946 (8th Cir. 2003); *SS Bournemouth, supra,* 318 F.Supp at 842 ("The court concludes that the doctrine of *res ipsa loquitur* does apply to the present case, and that based on all the evidence before the court the plaintiff should prevail").

The court in *Delaware Shipyard, supra,* explained succinctly:

> [The defendant is required] to rebut the inference that it failed to use due care.  The defendant has not done this.  No feasible explanation was supported by any cogent evidence.  Here, as in many other *res ipsa loquitur* cases, the defendant has failed to rebut the inference of negligence arising from an unexplained event.

369 F.Supp at 719-720 (string-citing *res ipsa* cases finding liability).

In *Austerberry v. United States,* 169 F.2d 583 (6th Cir. 1948), the court held similarly, finding the defendant liable under the *res ipsa* doctrine, and noting also circumstances very like the spoliation of evidence present in this case:

> From the considerable body of evidence in the case relating to these conditions and happenings, it is our conclusion that the circumstances of the explosion and the proof in the case *established the negligence of the appellee, under the doctrine of res ipsa loquitur. . . .* It is also to be observed that although the tank and other equipment of the boat were in the possession of the government at the time of trial, they were not produced . . . since it was not produced, *the presumption is that its production would have constituted evidence unfavorable to the respondent*, and in such a case, the court is justified concluding that the proof, if offered, instead of rebutting, would sustain the case against the government.

*Id.* at 593 (emphasis added).  Furthermore, contrary to XPI's contention, it is not necessary for the party invoking the *res ipsa* doctrine, *i.e.* Claimants Bartlett and

Jaques, to produce any evidence of the actual cause of the accident. *Baycon Industries, supra*, 804 F.2d at 684 ("Appellant's argument that proof of cause is required would render the doctrine of *res ipsa loquitur* a nullity. The doctrine was formed to allow permissible inferences to be drawn from unexplained events"); *SS Bournemouth, supra*, 318 F.Supp at 842 ("The plaintiff did not produce any evidence of the actual cause of the accident").

In sum, Claimants' *prima facie* case is effectively made out through the cited, undisputed facts, and the twin evidence doctrines discussed above.

XPI must now come forward with *real facts* to rebut the inference of negligence. It must submit what the Ninth Circuit calls at least some "significant probative evidence" (Standards of Review, *supra*) in order to avoid being held liable as a matter of law. The Court of Appeal has made it abundantly clear that XPI cannot merely create "some metaphysical doubt" or simply point to "any disagreement" about a material issue of fact, to survive summary judgment. *Id.*

And it is clear XPI faces, as in many *res ipsa* cases, an insurmountable burden. Its own people admit there was neither inclement weather nor rough seas that could have caused its high strength towline to break. *Cf. Baycon, supra*, at 634 ("Weather was not a factor. Rough water was not involved."). Most importantly, XPI had repeated *actual notice* of the very problem that caused serious injury here, and did absolutely nothing about it.

## IV.   **CONCLUSION**

Claimants respectfully request that the Court enter an Order holding XPI liable as a matter of law, or alternatively, if for any reason the Court declines to do so, holding a strong inference of negligence, *i.e.,* a *prima facie* case, has been established for purposes of further proceedings.

DATED:  Honolulu, Hawaii, December 20, 2005.

Respectfully submitted,

PATRICK F. McTERNAN
HOWARD G. McPHERSON
Attorney for Claimants
HEALY BARTLETT and
STEVE JAQUES

11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter | ) CIVIL NO. CV04-00730 BMK |
| | ) (In Admiralty) |
| of | ) |
| | ) CERTIFICATE OF SERVICE |
| The Complaint of X-TREME | ) |
| PARASAIL, INC., a Hawaii corporation, | ) |
| regarding Motor Vessel, X-TREME, | ) |
| Official Number 1153017 for exoneration | ) |
| from or limitation of liability, | ) |
| | ) |
| Petitioner. | ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, a true and correct copy of the foregoing document was duly served by the means indicated below, to the following persons:

M. W. MONROE & ASSOCIATES, P.C.    [via U. S. Mail]
DANIEL F. BERBERICH, ESQ.
5933 W. Century Boulevard
Royal Airport Plaza, Suite 800
Los Angeles, California 90045

LAW OFFICES OF ROY Y. YEMPUKU, ALC    [via Hand-delivery]
ROY Y. YEMPUKU, ESQ.
The Pacific Guardian Center
Suite 2930, Mauka Tower
737 Bishop Street
Honolulu, Hawaii 96813

Attorneys for Petitioner
X-TREME PARASAIL, INC.

DATED:  Honolulu, Hawaii, December 20, 2005.

PATRICK F. McTERNAN
HOWARD G. McPHERSON
Attorney for Claimants
HEALY BARTLETT and
STEVE JAQUES